# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRIAN A. PICCINETTI,<br><br>Plaintiff,<br><br>v.<br><br>CLAYTON, MYRICK, MCCLANAHAN<br>& COULTER, PLLC, et al.,<br><br>Defendants. | Civil Action No. 16-4032 (TJB)<br><br>MEMORANDUM OPINION |

**BONGIOVANNI, Magistrate Judge**

This matter comes before the Court upon Plaintiff Brian A. Piccinetti's (Plaintiff) motion for attorneys' fees and costs. [Docket Entry No. 47]. Defendants Clayton, Myrick, McClanahan & Coulter, PLLC (the "PLLC"), Internal Credit Systems, Inc. ("ICS") and Robert J. Nauseef ("Nauseef") (collectively, "Defendants") oppose Plaintiff's motion. The Court has fully reviewed and considered all arguments made in support of and in opposition to Plaintiff's motion for attorneys' fees and costs. The Court considers Plaintiff's motion without argument pursuant to L.Civ.R. 78.1(b). For the reasons set forth below, Plaintiff's motion is GRANTED IN PART.

## I. Background and Procedural History

Plaintiff filed this action against Defendants on July 5, 2016 alleging that Defendants used an unfair and unconscionable means to collect a debt in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.* The debt at issue involved money purportedly owed to Gold's Gym. Plaintiff stylized his Complaint as a class action brought on behalf of "a class of New Jersey consumers seeking redress for Defendant's [sic] actions[.]" (Compl. ¶3; Docket Entry No. 1). Defendants answered Plaintiff's Complaint on August 1, 2016, denying any

culpable conduct and raising several affirmative defenses. (*See generally,* Def. Answer; Docket Entry No. 6).

On March 2, 2017, Defendants filed a motion for partial judgment on the pleadings under FED.R.CIV.P. ("Rule") 12(c), arguing that they were entitled to judgment as a matter of law on Counts III and IV of Plaintiff's Complaint. (*See generally*, Def. Br. in Support of Motion for Judgment on the Pleadings; Docket Entry No. 23-1). Count III asserted claims against the PLLC and Nauseef for violations of §§ 1692e(2), 1692e(5) and 1692e(10) of the FDCPA. (*See* Pl. Compl. ¶¶ 67- 71). Section 1692e(2) prohibits a debt collector from falsely representing "the character, amount, or legal status of any debt[.]" Section 1692e(5) prohibits a debt collector from "threat[ening] to take any action that cannot legally be taken or that is not intended to be taken." Section 1692e(10) prohibits a debt collector from using "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." Count IV of Plaintiff's Complaint asserted a violation of § 1692j of the FDCPA. (*See* Pl. Compl. ¶¶ 72 – 75). Section 1692j makes it "unlawful to design, compile, and furnish any form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of or in an attempt to collect a debt such consumer allegedly owes such creditor, when in fact such person is not so participating." In the alternative, Defendants requested permission to file an Amended Answer, allowing Nauseef to assert additional affirmative defenses. (*See* Def. Br. in Support of Motion for Judgment on the Pleadings at 12-15).

The District Court granted in part and denied in part Defendants' motion for partial judgment on the pleadings. Specifically, the District Court granted Defendants' motion with respect to certain claims asserted in Count III of the Complaint and as to Count IV in its entirety.

With respect to Count III, the District Court dismissed Plaintiff's claims for violations asserted under §1692e(2) as well as for any purported violations of §1692e based on the PLLC and Nauseef's lack of meaningful involvement in the collection of Plaintiff's debt, but found that Plaintiff adequately stated claims against the PLLC and Nauseef for violating §§ 1692e(5) and 1692e(10). In dismissing Plaintiff's claim that the PLLC and Nauseef violated §1692e(2), the District Court noted that Plaintiff did not respond to Defendants' arguments that Plaintiff owed money to Gold's Gym and that the amount stated in the collection letter at issue was correct, apparently conceding that there was no §1692e(2) violation. Mem. Op. of 9/5/2017 at 4; Docket Entry No. 27. Further, with respect to Plaintiff's lack of meaningful involvement by attorneys claim under § 1692e, the District Court noted that "Count Three does not appear to allege Clayton and Nauseef's lack of meaningful involvement as a basis for a violation of 15 U.S.C. §1692e." *Id.* at 7. Given Plaintiff's "failure to allege any facts regarding the purported lack of meaningful involvement by attorneys," the District Court granted Defendants' motion "with respect to this claim." *Id.* Finally, the District Court granted Defendants' motion to dismiss Plaintiff's claim for alleged violations of §1692j, noting that Plaintiff failed to respond to Defendants' argument that §1692j "'does not apply to collection letters sent by one debt collector on behalf of another debt collector[,]" thereby apparently conceding that Defendants were right. *Id.* at 8. The aforementioned dismissals were made without prejudice, and Plaintiff was given permission to file an Amended Complaint. Order of 9/5/2017 at 1-2; Docket Entry No. 28; Mem. Op. of 9/5/2017 at 4 n. 5, 8 n. 9.

On September 19, 2017, Defendants filed a motion for reconsideration with respect to the District Court's September 5, 2017 decision granting in part and denying in part Defendants' motion for partial judgment on the pleadings. [Docket Entry No. 30]. Through their motion for

3

reconsideration, Defendants argued that: (1) the District Court's dismissals should have been made with, not without, prejudice; (2) the District Court should have also dismissed Plaintiff's claims asserted under 15 U.S.C. §§ 1962e(5) and (10) and that these dismissals should be made with prejudice; and (3) the District Court never addressed Defendants' request for alternative relief and should Plaintiff's claims not be dismissed with prejudice, Defendants should be permitted to amend their Answer to allow Nauseef to raise additional defenses. (*See generally*, Def. Letter Br. of 9/19/2017; Docket Entry No. 30-1).

On September 20, 2017, Plaintiff filed his Amended Complaint. In same, Plaintiff did not pursue any claims for violations of 15 U.S.C. § 1692j. Plaintiff did, however, reassert claims based on purported violations of § 1692e(2), adding limited additional factual allegations in support of same. Plaintiff also made certain changes to his class allegations and added Theodore Lachman ("Lachman") as a defendant, seeking relief from Lachman in Counts I and II of the Amended Complaint.

Shortly after the Amended Complaint was filed, the Court scheduled a status conference with the parties. Text Order of 10/10/2017; Docket Entry No. 38. During the conference, the Court engaged in settlement discussions with counsel and scheduled a formal settlement conference for November 7, 2017. *See* Minute Entry of 10/26/2017. The settlement conference was later adjourned to December 12, 2017 at the parties' request. Text Order of 11/8/2017; Docket Entry No. 40. While the matter did not settle on December 12, 2017, headway was made, and the parties were to report back with an update by December 22, 2017. *See* Minute Entry of 12/12/2017.

On December 28, 2017, the parties informed the Court that a settlement had been reached. Defendants agreed to pay Plaintiff $2,500 on or before January 15, 2018. The parties further consented to Magistrate Judge jurisdiction with respect to Plaintiff's anticipated fee application,

as the parties could not reach an agreement with respect to what was a reasonable fee for Plaintiff's counsel. (*See* Email from Christopher Dalton to Hon. Tonianne J. Bongiovanni with cc to Ari Marcus and Patrick D. Doran of 12/28/2017 at 12:34 p.m., Ex. A. to Decl. of Christopher J. Dalton, Esq. of 3/30/2018; Docket Entry No. 52-1); Order and Notice of Consent to Jurisdiction by U.S. Magistrate Judge of 1/8/2018, Docket Entry No. 43. In light of the parties' settlement agreement, Defendants withdrew their motion for reconsideration as moot. *See* Letter Order of 1/29/2018; Docket Entry No. 44. The Court set a briefing schedule for Plaintiff's motion for attorneys' fees and costs. That motion is fully briefed and now ripe for the Court's consideration.

**II.     Legal Standard**

The FDCPA affords prevailing plaintiffs the right to recoup their reasonable attorneys' fees and costs. *See* 15 U.S.C.A. §1692k(a)(3). Generally, courts use the "lodestar" method in evaluating a fee application and, indeed, the lodestar calculation is presumed to yield a reasonable attorney fee award. *See Machado v. Law Offices of Jeffrey*, Civil Action No. 14-7401 (MAS) (TJB), 2017 WL 2838458, *2 (D.N.J. June 30, 2017). Under the lodestar method, an attorney's reasonable hourly rate is multiplied by the number of hours the attorney reasonably spent working on a matter. *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 703 n.5 (3d Cir. 2005) (citing *Blum v. Stenson*, 565 U.S. 886, 888, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) (citations omitted)).

The "party seeking attorney fees bears the ultimate burden of showing that its requested hourly rates and the hours it claims are reasonable." *Id*. (*citing Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990)). "Reasonable hourly rates are typically determined based on the market rate in the attorney's community for lawyers of similar expertise and experience." *Machado*, 2017 WL 2838458, at *2 (citing *Interfaith*, 426 F.3d at 713). *Evans v. Port Auth. of*

*N.Y. and N.J.*, 273 F.3d 346, (3d Cir. 2001). The attorney seeking fees bears the burden of establishing that the rate requested "constitutes a reasonable market rate for the essential character and complexity of the legal services rendered." *Smith v. Philadelphia Hous. Auth.*, 107 F.3d 223, 225 (3d Cir. 1997). With respect to the hours claimed, it is incumbent upon the Court to "exclude hours that are not reasonably expended." *Rode*, 892 F.2d at 1183 (citing *Hensely v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). "Hours are not reasonably expended if they are excessive, redundant, or otherwise unnecessary." *Id*. The Court, however, may not reduce a fee award *sua sponte*. Instead, "it can only do so in respect to specific objections made by the opposing party. But once the opposing party has made a specific objection, the burden is on the prevailing party to justify the size of its request." *Interfaith*, 426 F.3d at 711 (citing *Bell v. United Princeton Props., Inc.*, 884 f.2d 713, 719 (3d Cir. 1989).

Further, while the lodestar calculation is "strongly presumed to yield a reasonable fee" (*Washington v. Phila. County Ct. of C.P.*, 89 F.3d 1031, 1035 (3d Cir. 1996) (citing *City of Burlington v. Dauge*, 505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992)), "[t]he court can adjust the lodestar downward if the lodestar is not reasonable in light of the results obtained." *Rode*, 892 F.2d at 1183 (citing *Hensley*, 461 U.S. at 434-37). "Indeed, 'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" *Farrar v. Hobby*, 506 U.S. 103, 114, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) (quoting *Hensley*, 461 U.S. at 436). As such, where a plaintiff has achieved only limited or partial success, "the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Hensely*, 461 U.S. at 436. When a fee award based on the lodestar calculation would be excessive, the Court may exercise its measured discretion to reduce same. *Farrar*, 506 U.S. at 115; *see Machado*, 2017 WL 2838458, at *2. In fact, the Court "retains a great deal of

discretion in deciding what a reasonable fee award is" (*Bell*, 884 F.2d at 721), and, it is understood that "in determining whether the fee request is excessive . . . the court will inevitably engage in a fair amount of 'judgment calling' based upon its experience with the case and the general experience as to how much a case requires." *Evans*, 273 F.3d at 362. However, given the purpose of mandatory fee-shifting statutes like the FDCPA, a "reasonable" attorneys' fee does not necessarily mean a proportionate fee. *See Agostino v. Quest Diagnostics, Inc.*, Civil Action No. 04-4362 (SRC), 2011 WL 13138113, *2 n.2 (D.N.J. Oct. 6, 2011).

**III. Analysis**

    **A. Reasonable Hourly Rate**

Here, Plaintiff seeks to recover attorneys' fees for three professionals: Ari Marcus, Yitzchak Zelman and Lori Hague. Both Messrs. Marcus and Zelman have submitted declarations outlining their credentials and experience in support of their claimed hourly rates. Ms. Hague has not, and neither Mr. Marcus nor Mr. Zelman explain her role in this litigation.

Mr. Marcus states that his regular hourly rate is $450.00 per hour, though he is only seeking to be reimbursed in this matter at $400.00 per hour.[1] (Decl. of Ari Marcus, ¶ 10 n.1; Docket Entry No. 47-3). In support of the $400.00 per hour rate, Mr. Marcus notes that he graduated from Brooklyn Law School in June 2010 and has been licensed to practice by the State of New Jersey since 2010. (*Id*. ¶¶ 4 & 5). Mr. Marcus notes that he has been continuously practicing consumer protection law in the Federal Courts since 2010 and indicates that he has appeared in various consumer law matters in a number of Federal Courts across the country. (*Id*. ¶ 6). Mr. Marcus

---

[1] In Plaintiff's reply Declaration, Mr. Marcus relies on the $450.00 hourly rate. (Reply Decl. of Ari Marcus ¶4; Docket Entry No. 53-1). However, given his initial representation, the Court views Mr. Marcus' fee petition to request compensation based on an hourly rate of $400.00 per hour.

7

further notes that he founded the law firm of Marcus Law, LLC in 2011, which became Marcus & Zelman, LLC in 2015 when Mr. Zelman joined the firm and that since that time, the firm has recovered millions of dollars vindicating consumers' rights. (*Id*. ¶¶ 7 & 8). Mr. Marcus points out that in a different matter pending in the District of New Jersey, the Honorable Peter G. Sheridan appointed Marcus & Zelman, LLC as class counsel, finding the firm to be "qualified and experienced in consumer action lawsuits." (*Id*. ¶ 9 (internal quotation marks and citation omitted)). Mr. Marcus declares that his requested rate is in line with other attorneys who share his "skill, background and acumen[.]" (*Id*. ¶ 11). In this regard, Mr. Marcus relies on the rates set forth in the 2015-2016 United States Consumer Law Attorney Fee Survey Report as well as cases decided in this District in which he was awarded an hourly rate of $450.00 per hour to support the reasonableness of a $400 hourly rate. (*Id*. ¶¶ 12-15). Mr. Marcus also relies on a letter submitted by William Pinilis, Esq. to support his requested hourly rate. (Letter from William J. Pinilis to Hon. Tonianne J. Bongiovanni of 3/14/2018; Docket Entry No. 49).

Mr. Zelman states that his regularly hourly rate is $350.00 per hour and he seeks to be reimbursed at that rate in this litigation. (Decl. of Yitzchak Zelman, ¶ 10; Docket Entry No. 47-2). In support of this hourly rate, Mr. Zelman notes that he graduated from the Benjamin N. Cardozo School of Law in June 2012 and has been licensed to practice by the State of New Jersey since 2012. (*Id*. ¶¶ 4 & 5). Mr. Zelman notes that he has been continuously practicing consumer protection law in the Federal Courts since 2012 and indicates that he has appeared in various consumer law matters in a number of Federal Courts across the country. (*Id*. ¶ 6). Mr. Zelman further notes that with Mr. Marcus, he founded the law firm of Marcus & Zelman, LLC in June 2015 and that since its creation, the firm has recovered millions of dollars vindicating consumers' rights. (*Id*. ¶¶ 7 & 8). Mr. Zelman, like Mr. Marcus, points out that in a different matter pending

8

in the District of New Jersey, the Honorable Peter G. Sheridan appointed Marcus & Zelman, LLC as class counsel, finding the firm to be "qualified and experienced in consumer action lawsuits." (*Id.* ¶ 9 (internal quotation marks and citation omitted)). Mr. Zelman declares that his requested rate of $350.00 per hour is in line with other attorneys who share his "skill, background and acumen." (*Id.* ¶ 11). In this regard, Mr. Zelman relies on the rates set forth in the 2015-2016 United States Consumer Law Attorney Fee Survey Report as well as cases decided in this District in which he was awarded an hourly rate of $350.00 per hour to support the reasonableness of his request to be compensated at an hourly rate of $350.00 per hour. (*Id.* ¶¶ 12-15). Like Mr. Marcus, Mr. Zelman also relies on the letter submitted by William Pinilis, Esq. to support his requested hourly rate. (Letter from William J. Pinilis to Hon. Tonianne J. Bongiovanni of 3/14/2018).

Defendants' object to Messrs. Marcus and Zelman's respective requests to be compensated at $400.00 and $350.00 per hour, arguing that said hourly rates are unsupported and excessive. Defendants contend that Mr. Pinilis's letter submitted in support of Messrs. Marcus and Zelman's fee request should be given no weight as it "offers an unhelpful net opinion with no analysis." (Def. Opp. Br. at 4; Docket Entry No. 52). Defendants further take issue with Messrs. Marcus and Zelman's references to other cases in which their requested hourly rates were upheld, noting that "their fee requests were *unopposed*" in same. (*Id.* at 5). Defendants contend that a better benchmark for determining the reasonableness of the requested hourly rates is by reference to the Community Legal Services of Philadelphia ("CLS") fee schedule, which has been utilized in this District before. (*Id.* at 5-6 (citing *Machado*, 2017 WL 2838458, at *2-3)). Based on same, Defendants suggest hourly rates of $270 and $225 per hour for Messrs. Marcus and Zelman respectively. (*Id.* at 6). Defendants note that such rates would be consistent with the Court's award of $15,000 in *Beneli v. BCA Fin. Servs., Inc.*, Civ. Act. No. 16-2737, 2018 WL 734673, at *16

(D.N.J. Feb. 6, 2018), which effectively worked out to a blended rate of $251 per hour for the work performed by Messrs. Marcus and Zelman. (*Id*. at 6).

Despite Defendants' objections to the contrary, the Court finds the hourly rates requested by Messrs. Marcus and Zelman to be reasonable. In reaching this conclusion, the Court gives no weight to the opinions set forth in Mr. Pinilis' letter. As Defendants note, Mr. Pinilis does not provide the bases for his opinion that the hourly rates requested by Messrs. Marcus and Zelman are "consistent with those charged by other lawyers, with similar experience, in the general community." (Letter from William J. Pinilis to Hon. Tonianne J. Bongiovanni of 3/14/2018 at 2). Without any reference to fee surveys of rates charged by attorneys with similar experience in New Jersey or an analysis of similar fee applications in this District or other evidence, Mr. Pinilis' conclusions about the reasonableness of the requested hourly rates are unpersuasive.[2] Nevertheless, the Court finds that Messrs. Marcus and Zelman have adequately supported their requested rates by reference to their experience, years of practice, the 2015-2016 United States Consumer Law Attorney Fee Survey Report (the "CLA Report") and the fees they have been awarded in other FDCPA cases in this District. As set forth in their declarations, Mr. Marcus has been practicing law in New Jersey for 8 years and Mr. Zelman for 5. Both Messrs. Marcus and Zelman focus their practice on consumer protection law. Indeed, collectively in the District of New Jersey alone, Messrs. Marcus and Zelman have pursued at least 296 FDCPA cases.

Further, in two recent cases in this District, the Court determined that hourly rates requested by Messrs. Marcus and Zelman similar to those requested here were reasonable. Specifically, in *Town & Country Jewelers, LLC v. Meadowbrook Insurance Group, Inc.*, Civil Action No. 15-

---

[2] The only rate outside of Messrs. Marcus and Zelman's requested hourly rates mentioned in Mr. Pinilis' letter is his own regular hourly rate of $625 per hour in consumer matters. (*Id*.)

2519 (PGS), the Court approved and found reasonable Mr. Marcus' requested hourly rate of $450.00 per hour and Mr. Zelman's requested hourly rate of $350.00 per hour. Similarly, in *Truglio v. CBE Group, Inc.*, Civil Action No. 15-3813 (TJB), the Court approved and found reasonable Mr. Marcus' requested hourly rate of $450.00 per hour and Mr. Zelman's requested hourly rate of $350.00 per hour. While the Court acknowledges that Messrs. Marcus and Zelman's fee petitions in those cases were unopposed, that does not alter the fact that the Court determined that the hourly rates requested were appropriate. In addition, while the Court in *Beneli* approved a fee petition that yielded Messrs. Marcus and Zelman an effective blended hourly rate of $251 per hour, the Court specifically declined "to rule on whether Counsel's $425/hour and $350/hour fees are reasonable." 2018 WL 734673, at *16. There was no need for the *Beneli* Court to address the reasonableness of the requested hourly rates because through their fee petition Messrs. Marcus and Zelman agreed to recoup fees and expenses that reflected "lower actual, effective average rates[.]" *Id*.

Messrs. Marcus and Zelman's requested hourly rates are also supported by the CLA Report. While Defendants ask the Court to rely on the CLS fee schedule, instead, the Court finds the CLA report to be a better benchmark. While "the Third Circuit has found it permissible for courts to employ the [CLS] fee schedule in determining a reasonable rate for attorneys' fees" (*Machado*, 2017 WL 2838458, at *3 (citing *Maldonado v. Houstoun*, 256 F.3d 181, 187-88 (3d Cir. 2001))), it has been so approved "as accurately reflecting prevailing rates in Philadelphia, not New Jersey." *Perez v. Midland Funding LLC*, Civil Action No. 09-6407 (SDW), 2011 WL 5156869, at *4 n.5 (D.N.J. Aug. 11, 2011) (declining to rely on CLS fee schedule in determining the reasonableness of plaintiff's counsels' hourly rates). Everything considered, the Court finds

that Plaintiff has established the reasonableness of Messrs. Marcus and Zelman's requested hourly rates of $400 and $350 per hour respectively.

As noted above, Plaintiff also seeks to recoup fees incurred by Ms. Hague. As further noted, Plaintiff has provided no information regarding who Ms. Hague is, her role at Marcus & Zelman, LLC, her years of experience, etc. As a result, the Court shall not award any fees for the 0.3 hours she spent working on this matter.

### B. Hours of Work Reasonably Performed

As Defendants note, even Plaintiff concedes that "the claim in this action was relatively simple and straightforward[.]" (Pl. Br. at 6; Docket Entry No. 47-1). Nevertheless, significant litigation was conducted in the year and a half this matter was pending before settlement. Plaintiff was partially successful in defending against a motion for partial judgment on the pleadings filed with respect to Counts III and IV of his Complaint. Plaintiff was granted leave to amend his Complaint to address the claims the Court dismissed without prejudice, which Plaintiff pursued. The parties engaged in discovery and Plaintiff opposed Defendants' motion for reconsideration filed with respect to the District Court's decision on Defendants' motion for partial judgment on the pleadings. In determining the reasonableness of the work performed by counsel, the Court takes note of these proceedings, recognizing that many of them were prompted by Defendants' actions. The Court also acknowledges that Plaintiff settled the matter for $2500, more than the statutory maximum of $1000. As such, the Court finds that Plaintiff's counsel certainly attained a fair measure of success in these proceedings.

The Court appreciates that Defendants made efforts to settle this case early on, such as on July 20, 2016 when Nauseef offered Plaintiff $2500.00 to settle the matter, the same figure Plaintiff accepted in January 2018, and in September 2017 when Defendants offered Plaintiff $7000.00 to

12

settle the case. The Court, however, also finds that Plaintiff's refusal to accept these offers does not equate to Plaintiff unreasonably prolonging the matter. As Plaintiff notes, the original $2500.00 offer was inclusive of attorneys' fees and costs. Had Plaintiff accepted same, he would have only recovered approximately $500.00 given the attorneys' fees and costs already incurred. Plaintiff ultimately recovered 5 times that amount via the settlement he accepted, certainly a preferable result.

In addition to arguing that Plaintiff unreasonably prolonged this litigation by failing to accept reasonable settlement offers, Defendants also take issue with specific billing entries and categories of entries listed by Messrs. Marcus and Zelman in their fee application, arguing that they are plainly excessive. Specifically, Defendants object to the following entries as being excessive:

- The 1.3 hours billed by Mr. Marcus on June 30, 2016 and 0.4 hours billed by Mr. Zelman on July 1, 2016 preparing Plaintiff's original Complaint.

- The 2.2 hours billed by Mr. Marcus on November 1, 2016 and 0.5 hours billed by Mr. Zelman on November 1, 2016 preparing and serving discovery requests.

- The 1.8 hours billed by Mr. Zelman on April 21, 2017 revising the discovery demands Plaintiff served in November 2016.

- The 3.9 hours billed by Mr. Zelman on February 6, 2017 researching and drafting Plaintiff's opposition to Defendants' motion for partial judgment on the pleadings.[3]

- The 1.1 hours billed by Mr. Marcus on February 10, 2017 researching the issue of service after an answer has been filed.[4]

---

[3] Defendants also object to this entry based on the timing of same. Defendants note that they did not file their motion for partial judgment on the pleadings until March 2, 2017, yet, according to the time sheet submitted, Plaintiff began researching and drafting his opposition on February 6, 2017.

[4] Defendants also object to this entry based on the timing of same. Defendants note that they did not file their motion for partial judgment on the pleadings until March 2, 2017, yet Plaintiff researched this issue on February 10, 2017 according to the time sheets submitted by counsel.

13

- The 2.4 hours billed by Mr. Marcus on March 7, 2017 reviewing Defendants' motion for partial judgment on the pleadings.

- The 4.8 hours billed by Mr. Zelman on April 5, 2017 researching and drafting Plaintiff's opposition to Defendants' motion for partial judgment on the pleadings.

- The 6.5 hours billed by Mr. Zelman on April 7, 2017 working on Plaintiff's opposition to Defendants' motion for partial judgment on the pleadings.

- The 2.8 hours billed by Mr. Marcus on April 10, 2017 reviewing and editing Plaintiff's opposition to Defendants' motion for partial judgment on the pleadings.

- The 2 hours billed by Mr. Zelman on September 21, 2017 reviewing Defendants' motion for reconsideration.

- The 3.8 hours billed by Mr. Zelman on September 21, 2017 researching and drafting Plaintiff's opposition to Defendants' reconsideration motion regarding the standard of review for such motions.

- The 6.6 hours billed by Mr. Zelman on September 28, 2017 researching and drafting Plaintiff's opposition to Defendants' reconsideration motion regarding why the standard for reconsideration should not apply to Plaintiff's §§ 1692e2, 1692e5, 1692e10 and 1692e generally claims.

- The 1.3 and 1.8 hours billed by Mr. Marcus on October 1, 2017 reviewing and editing Plaintiff's opposition to Defendants' motion for reconsideration.

- The 0.8 hours billed by Mr. Zelman finalizing and preparing for filing Plaintiff's opposition to Defendants' motion for reconsideration.

- The 1.2 hours billed by Mr. Marcus on October 9, 2017 reviewing Defendants' reply brief filed in further support of their motion for reconsideration.

- Various time entries associated with Messrs. Marcus and/or Zelman's settlement communications and review of correspondence or other matters, including, but not limited to:

    o The 0.2 hours billed by Mr. Marcus on September 19, 2017 following up on settlement discussions and indicating the matter would not settle.

    o The 0.2 hours billed by Mr. Marcus on December 5, 2017 reviewing the notice of dissolution for the Clayton law firm.

    o The 0.2 hours billed by Mr. Marcus on January 29, 2018 reviewing Defendants' letter withdrawing their motion for reconsideration.

- o The 0.2 hours billed by Mr. Marcus on February 26, 2017 reviewing the scheduling order entered by the Court and calendaring dates.

- The 5.1 hours billed by Mr. Zelman on February 23, 2018 researching and drafting Plaintiff's fee application.

- The 2.5 hours billed by Mr. Marcus on February 27, 2018 reviewing and editing Plaintiff's fee application.

- The 8.5 hours billed by Mr. Marcus preparing Plaintiff's reply brief in further support of his fee application.

Defendants also argue that their success in obtaining dismissal of certain of the class claims is another reason justifying the reduction of Plaintiff's fee award. In addition, Defendants argue that they should not have to pay for any fees associated with Plaintiff's Amended Complaint because the amendments were "necessitated by Defendants' success in getting several claims dismissed[.]" (Def. Opp. Br. at 11). As a result, Defendants argue that they should not be charged with the 1.1 hours billed by Mr. Marcus on September 20, 2017 for preparing the Amended Complaint, which amended Plaintiff's meaningful involvement allegations and added Ted Lachman as a defendant. Defendants further argue that they should not be forced to incur the fee for the 1.1 hours because the most substantial change included in Plaintiff's Amended Complaint was the addition of Mr. Lachman as a defendant, an addition Defendants argue Plaintiff was not given permission to make. (*Id*.)

Further, Defendants argue that Plaintiff's fee application includes requests to be reimbursed for "purely 'administrative tasks' which 'are not the type normally billed to a paying client, [and] may not be recovered by a party through a fee petition." (*Id*. at 12 (quoting *Westberry v. Commonwealth Fin. Sys., Inc.*, Civil Action No. 11-4387 (JEI/KMW), 2013 WL 435948, at *5 (D.N.J. Feb. 4, 2013)). For example, Defendants note that on February 16, 2017, Mr. Marcus

billed 0.2 hours for reviewing a scheduling order and calendaring dates. Defendants argue that they should not be responsible for administrative tasks like calendaring dates. (*Id*.)

Finally, Defendants take issue with certain costs requested by Plaintiff. For example, Defendants note that Plaintiff has not provided "any invoices or receipts to substantiate those other costs." (Def. Opp. Br. at 13). Defendants additionally argue that they should not be required to pay $126 for the service of the PLLC and ICS (and Nauseef, improperly) through the North Carolina Secretary of State because their service could have been effectuated by certified mail. Defendants further contend that they should not be forced to pay $160 for Plaintiff's efforts to serve Mr. Lachman, the defendant Plaintiff improperly added to his case. (*Id*.)

The Court has thoroughly reviewed Messrs. Marcus and Zelman's billing records as well as the submissions of both parties. While the Court finds that many of the hours billed by counsel are reasonable, given Messrs. Marcus and Zelman's level of expertise in consumer matters in general and FDCPA cases in particular, several hours are excessive. For example, there is simply no reason it should have taken Mr. Marcus 1.1 hours to craft an Amended Complaint that closely resembles the original Complaint that only required 1.7 hours to complete, particularly when it is fair to question whether, given the breath of the attorneys' experience and consumer cases they have filed, the original 1.7 hours were necessary. Likewise, it should not have taken counsel over 21 collective hours to oppose Defendants' motion for partial judgment on the pleadings. Nor was it reasonable for counsel to spend over 16 collective hours preparing their opposition to Defendants' relatively straightforward motion for reconsideration. These are just a few examples of hours the Court finds were unreasonably expended given counsel's experience, expertise and familiarity with FDCPA litigation. Having carefully reviewed the parties' submissions, the Court makes the following reductions:

- The time spent preparing and serving discovery on November 1, 2016 shall be reduced from 2.2 to 1.7 hours for Mr. Marcus and 0.5 to 0.4 hours for Mr. Zelman.

- The time spent revising the aforementioned discovery requests on April 21, 2017 shall be reduced from 1.8 to 0.9 hours for Mr. Zelman.

- The time spent researching and drafting Plaintiff's opposition to Defendants' motion for partial judgment on the pleadings shall be reduced from 6.3 to 3.2 hours for Mr. Marcus and 15.2 to 7.6 hours for Mr. Zelman.

- The time spent reviewing, researching, drafting and finalizing Plaintiff's opposition to Defendants' motion or reconsideration shall be reduced from 3.1 to 1.6 hours for Mr. Marcus and 13.4 to 6.7 hours for Mr. Zelman.

- The time spent reviewing Defendants' reply brief submitted in further support of Defendants' motion for reconsideration shall be reduced from 1.2 to 0.4 hours for Mr. Marcus.

- The time spent researching, drafting, reviewing and/or editing Plaintiff's fee application shall be reduced from 2.5 to 1.3 hours for Mr. Marcus and 5.1 to 2.5 hours for Mr. Zelman.[5]

- The time spent by Mr. Marcus preparing Plaintiff's reply brief in further support of his fee application shall be reduced from 8.5 to 4.3 hours.

In addition, the Court finds that a reduction of the fee award is warranted based on hours Messrs. Marcus and Zelman spent on administrative tasks. As Defendants correctly noted, "'[a]dministrative tasks, which are not the type normally billed to a paying client, may not be

---

[5] The Court finds the hours spent on the fee application to be the most difficult to justify. As Defendants note, the fee application filed in this matter is quite similar to others filed by counsel in different cases in this District. Further, while the Court appreciates that the instant application was filed prior to the one filed on August 10, 2018 in *Laniado v. Certified Credct & Collection Bureau*, Civil Action No. 14-2798 (PGS) (D.N.J) (Docket Entry No. 46), the Court also notes that in *Laniado*, the Plaintiff's brief in support of the motion for attorneys' fees and costs is nearly identical to that filed here. They share an almost identical Table of Contents and an exactly identical Table of Authorities. In fact, the authorities cited in the Table appear on the exact same pages of the brief in *Laniado* as they do in Plaintiff's brief here. The Court estimates that the brief in *Laniado* contains at most 5% new content from that filed here. Yet surprisingly, the fee application in *Laniado* seeks reimbursement of 13.1 hours of work by Mr. Marcus and 9.6 hours of work by Mr. Zelman in connection with researching, preparing, revising, editing and finalizing the fee application. That figure is quite high in light of the work already performed here and gives the Court pause with respect to this fee application.

recovered by a party through a fee petition.'" *Westberry*, 2013 WL 435948, at *5 (quoting *Bilazzo v. Portfolio Recovery Assocs., LLC*, 876 F.Supp.2d 452, 471 (D.N.J. 2012) (internal quotation marks and citation omitted). "Such tasks may include [among others,] opening a file in a database, mailing letters, copying documents, entering case updates in a management system, calendaring deadlines, confirming court contact information, and talking with a process server or court clerk." *Id.*

The Court has found at least 10 billing entries included in Plaintiff's fee application that appear to include time spent on administrative tasks. These comprise time entries for Mr. Marcus on July 18, 2016 (0.1 hours), August 2, 2016 (0.3 hours), August 29, 2016 (0.2 hours), February 16, 2017 (0.2 hours), September 13, 2017 (0.2 hours), September 27, 2017 (0.3 hours) and December 28, 2017 (0.2 hours). Similarly, they include time entries for Mr. Zelman on January 3, 2017 (0.2 hours), April 13, 2017 (0.3 hours) and October 2, 2017 (0.8 hours). Most of the aforementioned entries involve some amount of block billing in which multiple tasks, some administrative, others not, are included in a single entry. "Block billing is an acceptable practice" and though it "may often result in a number of vague entries, rather than excluding an entire entry, the court should examine the listed activities and the time spent conducting each activity to determine 'whether the hours reasonably correlate to all of the activities performed.'" *Raab v. City of Ocean City*, Civl No. 11-6818 (RBK/KMW), 2017 WL 2779753, *5 (D.N.J. June 26, 2017) (quoting *United States v. NCH Corp.*, No. Civ. 98-5268 (SDW)(MCA), 2010 WL 3703756, *4 (D.N.J. Sept. 10, 2010). Nevertheless, "'[w]here the court is unable to separate unrecoverable time from recoverable time in such billing entries, the court may reject the entire billing entry.'" *Id.* (quoting *Walker v. Gruver*, No. 1:11-CV-1223, 2013 WL 5947623, *13 (M.D.Pa. Nov. 5, 2013)). After reviewing the individual entries, the Court finds that Mr. Marcus' request should be reduced

from 1.5 hours to 0.6 hours.  Further, the Court finds that Mr. Zelman's request should be reduced from 1.3 hours to 0.7 hours.

Finally, the Court shall award Plaintiff the following costs: (1) the $400 filing fee; (2) the $126.00 process server fee incurred serving Defendants through the North Carolina Secretary of State; and (3) the $10.00 parking fee incurred on December 12, 2017.  While it appears Defendants could have been served by other means, there was no requirement that Plaintiff use certified mail.  Further, fees incurred serving process are generally recoupable.  *See Machado*, 2017 WL 2838458 at *5; *Diena*, 2014 WL 5358995 at *7-8.  Nevertheless, the Court shall not require Defendants to pay the service of process fees associated with Mr. Lachman.  First, it is questionable whether Mr. Lachman should have been added to this case in the manner he was.  Second, no proceedings involving Mr. Lachman ever took place prior to the matter settling.  Third, and perhaps most importantly, it does not appear that a summons was ever issued to Mr. Lachman, meaning service could not have been properly effectuated on him.  Fourth, the process server attempted to serve Mr. Lachman, first, at an abandoned building and, next, at his residence during business hours on two weekdays.  The Court finds that Defendants should not have to reasonably pay for these efforts.

In total then, Plaintiff shall be awarded attorneys' fees in the amount of $22,825.00 and $536.00 in costs.  With respect to the attorneys' fees this breaks down to $16,000.00 (40 hours of work at $400 per hour) for Mr. Marcus, plus $6825.00 (19.5 hours of work at $350 per hour) for Mr. Zelman.  Defendants are directed to pay same no later than **November 9, 2018**.

## IV.     Conclusion

For the reasons stated above, Plaintiff's motion for attorneys' fees and costs is GRANTED IN PART.  An appropriate Order follows.

Dated:  October 26, 2018

s/Tonianne J. Bongiovanni
**HONORABLE TONIANNE J. BONGIOVANNI**
**UNITED STATES MAGISTRATE JUDGE**
