## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **BRIAN A. PICCINETTI,** | **Civil Action No. 16-4032 (TJB)** |
| **Plaintiff,** | |
| v. | **MEMORANDUM OPINION** |
| **CLAYTON, MYRICK, MCCLANAHAN & COULTER, PLLC, et al.,** | |
| **Defendants.** | |

**BONGIOVANNI, Magistrate Judge**

This matter comes before the Court upon Plaintiff Brian A. Piccinetti's (Plaintiff) reinstated motion seeking the entry of a Final Order and Judgment against Theodore Lachman ("Mr. Lachman") (Docket Entry No.57) and Mr. Lachman's reinstated cross motion to dismiss for lack of jurisdiction (Docket Entry No. 61).  In addition to cross moving to dismiss this matter, Mr. Lachman has also opposed Plaintiff's motion seeking the entry of a Final Order and Judgment. Plaintiff in turn has opposed Mr. Lachman's cross motion to dismiss.  The Court has fully reviewed and considered the arguments made in support of and in opposition to Plaintiff and Mr. Lachman's motions, including both those contained in the parties' briefs and those made during the hearing held on July 22, 2021.  For the reasons set forth below, Plaintiff's motion is GRANTED and Mr. Lachman's cross motion is DENIED.

### I.    Background and Procedural History

Given the parties' and the Court's familiarity with this case, the Court does not restate the entirety of this matter's factual background herein.  Instead, the Court includes only those facts most relevant to the pending motions, which themselves are extensive.

On July 5, 2016, Plaintiff, on behalf of a nationwide consumer class, filed a class action Complaint in this matter against Clayton, Myrick, McClanahan & Coulter, PLLC (the "PLLC"), Internal Credit Systems, Inc. ("ICS") and Robert J. Nauseef ("Nauseef") (collectively, "Defendants"), claiming that they violated the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* (*See, generally*, Pl. Compt.; Docket Entry No. 1). Defendants filed an Answer to Plaintiff's Complaint on August 1, 2016. (*See* Docket Entry No. 6). Thereafter, on March 2, 2017, Defendants filed a motion for judgment on the pleadings, asking the District Court to dismiss Counts III and IV of Plaintiff's Complaint, or, in the alternative, to permit Defendants to file an Amended Answer. (*See* Docket Entry No. 23). Counts III and IV of the Complaint contained Plaintiff's class allegations. (*See* Docket Entry No. 1). Plaintiff opposed Defendants' motion and, in the alternative, requested permission to file an Amended Complaint. (*See* Docket Entry No. 24-1).

The District Court granted in part and denied in part Defendants' motion. Specifically, the District Court granted without prejudice Defendants' motion for judgment on the pleadings as to Count III as to claims asserted under 15 U.S.C. § 1692e(2) and 15 U.S.C. § 1692e. The District Court also granted without prejudice Defendants' motion for judgment on the pleadings as to Count IV. However, the District Court denied Defendants' motion as to claims asserted in Count III under 15 U.S.C. § 1692e(5) and 15 U.S.C. § 1692e(10). *See* Mem. Op. and Order of 9/5/2017; Docket Entry Nos. 27 and 28. The District Court also gave Plaintiff permission to file an Amended Complaint by October 1, 2017. Order of 9/5/2017 at 2; Docket Entry No. 28.[1]

---

[1] Defendants moved to reconsider the District Court's decision on their motion for judgment on the pleadings (*see* Docket Entry No. 30), but withdrew said motion after reaching a settlement in the matter and consenting to magistrate judge jurisdiction regarding the contested fee application. (*See* Docket Entry Nos. 43 and 44).

Plaintiff filed an Amended Complaint on September 20, 2017. (Docket Entry No. 31). Through the Amended Complaint, in addition to amending the allegations contained in Count III and removing Count IV of the original Complaint, Plaintiff also added Mr. Lachman, an employee of ICS as a defendant, and asserted individual claims against him. (*See, generally*, Amended Complaint).

On October 10, 2017, the Court scheduled a status telephone conference for October 26, 2017. Text Order of 10/10/2017; Docket Entry No. 38. During the telephone conference, the Court, in addition to addressing the status of discovery, discussed scheduling a settlement conference in the matter. The parties were interested, but Plaintiff indicated he wanted Mr. Lachman, who he was having trouble serving, involved, as Plaintiff believed that Mr. Lachman would likely be responsible for paying any settlement.

The Court scheduled a settlement conference for November 7, 2017. Minute Entry of 10/26/2017. At the parties' request, the settlement conference was adjourned until December 12, 2017. Text Order of 11/8/2017; Docket Entry No. 40. The settlement conference occurred as rescheduled on December 12, 2017. While progress toward settlement was made, the parties were unable to reach an agreement during the conference. Nevertheless, they indicated that they wanted to continue their discussions. As a result, the Court provided them time to do so, directing them to report back with a written status update regarding their settlement discussions by December 22, 2017. Minute Entry of 12/12/2017. The Court also indicated that the operative pleading and a discovery schedule would be addressed if the matter did not settle. *Id*.

On December 28, 2017, the parties informed the Court that a settlement had been reached in this matter. According to the terms of the settlement:

1. Defendants will pay Brian Piccinetti $2,500 on or before 1/15/18.

2.  The fact that Defendants paid Brian Piccinetti $2,500 can be referenced in the fee application; that is, Plaintiff's counsel can, in connection with the fee application, reference that Plaintiff prevailed and obtained $2,500.

3.  Defendants waive any challenge to service of process.

4.  If Defendants do not pay whatever the Court awards within 14 days, absent an appeal, Plaintiff can enter a judgment for that amount against Internal Credit Systems, Clayton, Myrick, Robert Nauseef, and Ted Lachman, jointly and severally. Any party wishing to appeal must file a Notice of Appeal within 10 days of the Court's award.

5.  Pursuant to Fed. R. Civ. Pro. 73, the parties consent to magistrate judge jurisdiction and will submit the fee application to Your Honor, with a briefing schedule in accordance with Local Civil Rule 78.1(a) or as set by the Court.

(Email from Christopher Dalton to Hon. Tonianne J. Bongiovanni with cc to Ari Marcus and Patrick D. Doran of 12/28/2017 at 12:34 p.m., Ex. A to Decl. of Christopher J. Dalton, Esq., of 3/30/2018; Docket Entry No. 52-1).

On March 2, 2018, Plaintiff filed a motion for attorneys' fees. (Docket Entry No. 47). On March 30, 2018, Defendants opposed Plaintiff's motion. (Docket Entry No. 52). While Defendants agreed that Plaintiff was "a 'prevailing plaintiff' entitled to make an application for attorneys' fees and costs[,]" they disagreed that the fee sought was reasonable under the circumstances. (Letter Br. from Christopher J. Dalton to Hon. Tonianne J. Bongiovanni of 3/30/2018 at 1; Docket Entry No. 52). On October 26, 2018, the Court entered a Memorandum Opinion and Order granting Plaintiff's motion for attorneys' fees in part. (Docket Entry Nos. 55 & 56). The Court awarded Plaintiff attorneys' fees and costs in the amount of $22,825.00 and

$536.00 respectively.  Mem. Op. of 10/26/2018 at 19.  The Court directed Defendants to pay same no later than November 9, 2018.  *Id.*[2]

On November 16, 2018, Plaintiff filed the instant motion for entry of judgment under FED.R.CIV.P. ("Rule") 54(b).  (Docket Entry No. 57).  In same, Plaintiff requested that the Court enter a Final Judgment against the PLLC, ICS, Nauseef, and Mr. Lachman based on the fact that they neither paid the attorneys' fees and costs set forth in the Court's Memorandum Opinion and Order of October 26, 2018, nor appealed that Opinion and Order.  (*See* Notice of Motion of 11/16/2018, ¶¶ 3-5; Docket Entry No. 57).  Plaintiff's motion was given a return date of December 17, 2018.

On November 29, 2018, the Court reset the motion date to January 7, 2019.  On November 30, 2018, the Court received a letter from Christopher Dalton seeking permission for him and his firm to withdraw as counsel.  (Docket Entry No. 59).  The Court directed Mr. Dalton to file a

---

[2] The Court notes that the briefing on Plaintiff's motion for attorneys' fees, as well as the Court's Opinion and Order regarding same, were not drafted as precise as they should have been with respect to identifying from whom the fees were sought and attributable to.  For example, Plaintiff in his original moving papers referenced Defendant ICS and stated, "the Defendant agreed to pay the Plaintiff $2,500.00" and "[t]he Defendant further agreed to pay the Plaintiff's attorney's fees and costs[.]" (Pl. Br. at 4; Docket Entry No. 47-1).  Meanwhile, Defendants' opposition to Plaintiff's motion for attorneys' fees indicated that it was filed on behalf of Defendants who, in a footnote, are defined as "Defendant Clayton, Myrick was a small, struggling law firm in Raleigh, North Carolina, which has since been dissolved. Defendant Internal Credit Systems has two employees, Ted Lachman and Hie Tran. Defendant Robert Nauseef was an attorney employed to Clayton, Myrick." (Def. Opp. Br. at 1 n. 1; Docket Entry No. 52).  The Docket itself indicates that Defendants' opposition was filed on behalf of the PLLC, ICS, Nauseef and Mr. Lachman.  Further, the Court's Memorandum Opinion and Order referenced the original Defendants: the PLLC, ICS and Nauseef.  *See* Docket Entry Nos. 55 and 56.  The Court finds that the aforementioned nomenclature is not dispositive of who is responsible for the awarded fees and costs.  Instead, the settlement agreement itself, if enforceable, governs who is responsible to pay the awarded fees and costs.  As set forth therein, a judgment for the fees and costs awarded by the Court can be entered against ICS, the PLLC, Nauseef and Mr. Lachman, jointly and severally.  (Email from Christopher Dalton to Hon. Tonianne J. Bongiovanni with cc to Ari Marcus and Patrick D. Doran of 12/28/2017 at 12:34 p.m., ¶ 4).

formal motion to be relieved as counsel and indicated that Defendants would have the opportunity to object to counsel's request.  Letter Order of 12/7/2018; Docket Entry No. 60.  In its Letter Order, the Court also stayed Plaintiff's motion for entry of judgment.

Prior to the formal motion to withdraw being filed, in response to Plaintiff's motion for entry of judgment, Mr. Lachman filed an opposition to same and the instant cross motion to dismiss.  (Docket Entry No. 61).  Shortly after Mr. Lachman filed the cross motion, Mr. Dalton, in compliance with the Court's Letter Order of December 17, 2018, filed his formal motion to withdraw as counsel for Defendants.  (Docket Entry No. 66).  Thereafter, Plaintiff filed a reply brief in further support of his motion for entry of judgment and in opposition to Mr. Lachman's cross motion to dismiss.  (Docket Entry No. 67).

While the Court had already stayed Plaintiff's motion for entry of judgment, pending a decision on Mr. Dalton's motion to withdraw, given the additional motion practice described above, the Court exercised its discretion governing matters of docket control, and administratively terminated the motion for entry of judgment and cross motion to dismiss, pending a decision on the motion to withdraw.  *See* Letter Order of 5/2/2019; Docket Entry No. 68; *see also United States v. Washington*, 869 F.3d 193, 220 (3d Cir. 2017) (noting that "[a]s we have often said, matters of docket control and discovery are committed to [the] broad discretion of the district court"); *Halsey v. Pfeiffer*, Civil Action No. 09-1138, 2010 WL 3735702, at *1 (D.N.J. Sept. 17, 2010) (noting that "[d]istrict courts provide magistrate judges with particularly broad discretion in resolving discovery disputes"); *Gerald Chamles Corp. v. Oki Data Americas, Inc.*, Civ. No. 07-1947 (JEI), 2007 WL 4789040, at *1 (D.N.J. Dec. 11, 2007) (stating that it is "well-settled that Magistrate Judges have broad discretion to manage their docket and to decide discovery issues[.]")

On August 9, 2019, the Court granted Mr. Dalton's motion to withdraw.  Letter Order of 8/9/2019; Docket Entry No. 69.  In same, the Court noted that neither the PLLC nor ICS was permitted to proceed in this matter without counsel.  As a result, the Court afforded them and Nauseef, if he so chose, until September 10, 2019 to retain new counsel.  *Id*. at 4.  The Court later extended the deadline for counsel to be retained until September 24, 2019.  *See* Letter Order of September 9, 2019; Docket Entry No. 73.  When neither the PLLC, ICS or Nauseef retained new counsel by the deadline set by the Court, Plaintiff moved for a judgment as a matter of law as to the PLLC, ICS and Nauseef under FED.R.CIV.P. ("Rule") 54(b).  (Docket Entry No. 74).  The Court granted Plaintiff's motion on March 27, 2020.  *See* Mem. Op. and Order of 3/27/2020; Docket Entry Nos. 76 and 77.

While judgment was entered against the PLLC, ICS and Nauseef, the issue concerning Mr. Lachman remained open.  On March 30, 2021, the Court reinstated both Plaintiff's motion seeking the entry of a Final Order and Judgment against Mr. Lachman (Docket Entry No.57) as well as Mr. Lachman's cross motion to dismiss for lack of jurisdiction (Docket Entry No. 61).  *See* Letter Order of 3/30/2021; Docket Entry No. 78.  In so doing, the Court also gave Plaintiff and Mr. Lachman the opportunity to submit supplemental briefing, if desired, and set a remote hearing on the motions for May 13, 2021.  *Id*.   No supplemental briefing was submitted.

The remote hearing was not conducted as scheduled because an issue arose concerning whether the Supplemental Declaration of Mr. Dalton submitted on May 7, 2019 in conjunction with his motion to withdraw, which the Court determined was relevant to the pending motions, had been shared with Mr. Lachman, and whether there were any objections with the Supplemental Declaration being shared with Plaintiff.  When it became clear that Mr. Lachman had not received a copy of the Supplemental Declaration, the Court immediately provided him with a copy of same.

The Court also converted the May 13, 2021 hearing into a telephone conference to discuss whether the Supplemental Declaration would also be shared with Plaintiff.  At the close of the May 13, 2021 telephone conference, the Court reserved its decision on whether the Supplemental Declaration would be provided to Plaintiff and permitted Mr. Lachman to advise whether he had any objection to the Supplemental Declaration being shared with Plaintiff by May 20, 2021.

On May 20, 2021, the Court received correspondence from Mr. Lachman's current attorney, who was retained to represent him individually with respect to the pending motions. Through same, Mr. Lachman advised that "in his individual capacity[,]" he "never had an attorney-client relationship with Mr. Dalton . . . never signed an engagement letter with Mr. Dalton to represent him personally" and, consequently, "[a]ny conversations" he had "in his individual capacity with Mr. Dalton are not privileged."  (Email from Monica M. Littman to Hon. Tonianne J. Bongiovanni with cc to Richard J. Perr and Ari Marcus on 5/20/2021 at 1:42 p.m. (Attached hereto as Ex. 1)).[3]  On May 25, 2021, the Court entered a Letter Order determining that it was appropriate to provide Plaintiff with a copy of the Supplemental Declaration.  In this regard, the Court found:

> Here, Mr. Dalton's Supplemental Declaration focuses on communications between Messrs. Dalton and Lachman bearing on whether Mr. Dalton had authority to represent and bind Mr.

---

[3] Attached to Ms. Littman's email was a letter from Mr. Lachman in his capacity as President of ICS in which Mr. Lachman advised that ICS objected to the disclosure of the Supplemental Declaration because ICS had not and was not waiving its attorney-client privilege.  (Letter from Ted Mr. Lachman to Hon. Tonianne J. Bongiovanni (Attached hereto as Ex. 2)).  Plaintiff submitted a response to Mr. Lachman's letter, arguing that Plaintiff should not be precluded from reviewing the Supplemental Declaration as it pertained to communications with Mr. Lachman (not ICS), regarding the scope of Mr. Dalton's representation of Mr. Lachman, and, thus, clearly would not contain privileged communications that would justify an objection from ICS.  (Email from Ari Marcus to Monica M. Littman with cc to Hon. Tonianne J. Bongiovanni and Richard J. Perr on 5/20/2021 at 2:03 p.m. (Attached hereto as Ex. 3)).  Plaintiff also noted that since ICS is a corporate entity, it is not permitted to represent itself, and, consequently, any correspondence from ICS, like Mr. Lachman's letter, should be disregarded.  (*Id.*)

Lachman to being personally and individually responsible to pay the settlement reached in this matter on December 28, 2017, including Plaintiff's attorneys' fees and costs. Mr. Lachman has taken the position that Mr. Dalton did not represent him in his individual capacity and had no such authority. He has also explicitly agreed that because he was not represented by Mr. Dalton, such communications between him, in his individual capacity, and Mr. Dalton are not privileged. Moreover, even if some privilege did attach, the Court finds that Mr. Lachman has squarely placed such communications in issue by relying on specific emails between himself and Mr. Dalton concerning whether Mr. Dalton represented him in his individual capacity in support of his cross motion to dismiss. (*See* Ex. 1 to the Affidavit of Theodore Lachman; Docket Entry No. 62-1). It would be wholly unfair and prejudicial for Mr. Mr. Lachman to be permitted to selectively disclose such communications in support of his motion to dismiss and to disallow Plaintiff to fully explore all communications had on that matter, including those outlined in Mr. Dalton's Supplemental Declaration.

While Mr. Lachman, as President of ICS, attempts to thwart the disclosure of Mr. Dalton's Supplemental Declaration by asserting the attorney client privilege on behalf of ICS, the Court shall not countenance that effort. In the first instance, as Plaintiff notes, ICS is unrepresented, and a corporate entity like ICS is not permitted to appear except through licensed counsel. *See U.S. v. Cocivera*, 104 F.3d 566, 572 (3d Cir. 1996) (explaining that corporation may not appear *pro se*, and may not be represented by officer not licensed to practice law) (quoting *Rowland v. California Men's Colony*, 506 U.S. 194, 201-02, 113 S.Ct. 716, 121 L.Ed.2d 656 (1993) (stating "'It has been the law for the better part of two centuries . . . that a corporation may appear in the federal courts only through licensed counsel.'"). Second, ICS was apparently more than willing to waive whatever privilege it potentially had over the communications used by Mr. Lachman in support of his own cross motion to dismiss. Indeed, at no time did ICS raise any concerns regarding Mr. Lachman's disclosure of emails between Mr. Lachman and Mr. Dalton. Third, and perhaps most importantly, the communications at issue, which concern whether Mr. Dalton represented Mr. Lachman personally and had authority to bind Mr. Lachman in his individual capacity to the settlement, do not largely implicate ICS's attorney client communications with Mr. Dalton, though the Court is mindful that some incidental disclosures might occur. Under these circumstances, the Court finds that it is appropriate to provide Plaintiff with a copy of Mr. Dalton's Supplemental Declaration. **The Court attaches a copy of same hereto as Exhibit 4, though directs the Clerk of the Court to file the attached Supplemental Declaration under seal**. In light of the

> non-public nature of the Supplemental Declaration and the private
> character of the communications outlined therein, the Court finds
> good cause to seal same under L.Civ.R. 5.3(c).

Letter Order of 5/25/2021 at 4-6; (Docket Entry No. 80).

On May 25, 2021, the Court also entered a Text Order, scheduling a telephone conference with Mr. Dalton and General Counsel for Buchanan Ingersoll & Rooney, PC, to address certain concerns Mr. Dalton had regarding the prospect of being called as a witness at the anticipated hearing on Plaintiff's motion seeking the entry of a Final Order and Judgment against Mr. Lachman and Mr. Lachman's reinstated cross motion to dismiss for lack of jurisdiction. Counsel for Mr. Lachman and Plaintiff were invited to participate on the conference. While this telephone conference was originally set to take place on June 16, 2021, it was later rescheduled until June 28, 2021 at Mr. Dalton's request. Text Order of 6/1/2021; Docket Entry No. 83.

During the telephone conference held on June 28, 2021, the Court addressed Mr. Dalton's concerns regarding being called as a witness at the anticipated hearing on Plaintiff's motion seeking the entry of a Final Order and Judgment against Mr. Lachman and Mr. Lachman's reinstated cross motion to dismiss for lack of jurisdiction. The Court confirmed that it expected his testimony to focus on whether he represented and had the ability to bind Mr. Lachman to the settlement in this matter. There was no issue with Mr. Dalton testifying in this regard either because, as Mr. Lachman argues, there was no attorney-client relationship, so no privilege attached to these communications, or, an attorney-client relationship did exist, but Mr. Lachman waived the privilege as to this narrow topic. During the conference, the Court also set a hearing on the pending motions for July 22, 2021. *See* Minute Entry of 6/28/2021; Docket Entry No. 84.

The hearing went forward on July 22, 2021 as scheduled.  At the hearing, Plaintiff called two witnesses:  Mr. Lachman and Mr. Dalton.  No other witnesses were called.  At the close of the hearing, the Court reserved its decision.

As already noted herein, based on the parties' settlement agreement, Plaintiff seeks the entry of a Final Order and Judgment in the amount of $23,361.00, the combined amount of the attorneys' fees and costs awarded by the Court in its decision of October 26, 2018.  Plaintiff also requests that interest accrue on the judgment at the statutory post-judgment rate until the judgment is satisfied.  As also noted, Mr. Lachman opposes Plaintiff's motion and has cross moved to be dismissed from this case.  In this regard, Mr. Lachman argues that the Court lacks jurisdiction over him because he was never served with a Summons or the Amended Complaint, and because Mr. Dalton did not have express or apparent authority to represent that Mr. Lachman agreed to be jointly and severally liable in his personal capacity for the settlement in this matter.  (*See generally*, Mem. in Opp. of Motion for Entry of Judgment and in Support of Cross Motion to Dismiss; Docket Entry No. 62).

## II.    Legal Standard and Analysis

According to Rule 54(b):

> When an action presents more than one claim for relief--whether as a claim, counterclaim, crossclaim, or third-party claim--or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.  Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of judgment adjudicating all the claims and all the parties' rights and liabilities.

Here, no issue is present regarding the adjudication of Plaintiff's claim against Mr. Lachman based on the existence of claims against other parties. As indicated above, judgment as a matter of law has already been entered as to the PLLC, ICS and Nauseef under Rule 54(b). Further, there is no question that what is at issue is a "final judgment." *See Curtiss-Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 7, 100 S.Ct. 1460, 64 L.Ed. 2d 1 (1980) (noting that Rule 54(b) requires court to "first determine that it is dealing with a 'final judgment.'") The Court's award of attorneys' fees and costs is a "judgment" as "it is a decision upon a cognizable claim for relief[,]" and it is "final" as it represents the "'ultimate disposition'" of Plaintiff's claim for attorney's fees and costs as to Mr. Lachman. *Id.* (quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 436, 76 S.Ct. 895, 100 L.Ed. 2d 1297 (1956)). Instead, at issue is whether there was an enforceable settlement agreement involving Mr. Lachman, which in turn depends on whether Mr. Dalton, prior defense counsel, had express or apparent authority to bind Mr. Lachman to the parties' settlement agreement.

In the first instance, there is no real dispute that if express or apparent authority existed, an enforceable settlement involving Mr. Lachman was reached in this case. A settlement agreement is a type of contract. *See Mortellite v. Novartis Crop Prot., Inc.*, 460 F.3d 483, 492 (3d Cir. 2006) (citing *Borough of Haledon v. Borough of N. Haledon*, 358 N.J. Super. 289, 305 (App. Div. 2003)). Consequently, courts look to state contract law when determining whether an enforceable settlement agreement has been reached. *See Id.*; *see also Excelsior Ins. Co. v. Pennsbury Pain Ctr.*, 975 F.Supp. 342, 348-49 (D.N.J. 1996) (holding that "[s]tate law governs the construction and enforcement of settlement agreements in federal court.")

Under New Jersey state law, "[a]n agreement to settle a lawsuit is a contract which, like all contracts, may be freely entered into[,] and which a court, absent a demonstration of 'fraud or other

compelling circumstances,' should honor and enforce as it does other contracts." *Pascarella v. Bruck*, 190 N.J. Super. 118, 124-25 (App. Div.) (internal citation omitted).  Further, in New Jersey, there is a strong public policy favoring settlements.  *Nolan v. Lee Ho.*, 120 N.J. 465, 472 (1990). Consequently, courts "strain to give effect to the terms of a settlement wherever possible." *Dep't of Pub. Advocate v. N.J. Bd. of Pub. Util.*, 206 N.J. Super. 523, 528 (App. Div. 1985). Nevertheless, courts will not enforce "[a] settlement . . . 'where there appears to have been an absence of mutuality of accord between the parties or their attorneys in some substantial particulars, or the stipulated agreement is incomplete in some of its material and essential terms.'" *Bistricer v. Bistricer*, 231 N.J. Super. 143, 147 (Ch. Div. 1987) (quoting *Kupper v. Barger*, 33 N.J. Super. 491, 494 (App. Div. 1955)).  However, "a contract is no less a contract because some preferable clauses may be omitted either deliberately or by neglect.  So long as the basic essentials are sufficiently definite, any gaps left by the parties should not frustrate their intention to be bound."  *Id.* (internal quotation marks and citation omitted).

Moreover, under New Jersey law, as long as "the parties orally agree on the essential terms," a contract is formed.  *McDonnell v. Engine Distributors*, Civil Action No. 03-1999, 2007 WL 2814628, *3 (D.N.J. Sept. 24, 2007).  Thus, the fact "'[t]hat the agreement to settle was orally made is of no consequence, and the failure to do no more than . . . inform the court of settlement and have the clerk mark the case settled has no effect on the validity of a compromise disposition.'" *Moss v. McDonald's Corp.*, No. Civ. 03-5000 (GEB), 2006 Wl 680985, *4 ( D.N.J. March 13, 2016) (quoting Pascarella, 190 N.J. Super. at 124).  This is true "'even though [the parties] contemplate the later execution of a formal document to memorialize their undertaking.'"  *Id.* (quoting *United States v. Lightman,* 988 F.Supp. 448, 459 (D.N.J. 1997).  As a result, "as long as those essential terms are agreed to, 'the settlement will be enforced

notwithstanding the fact that a writing does not materialize because a party later reneges.'" *Id.* (quoting *Lahue v. Pio Costa*, 263 N.J. Super. 575, 596 (App. Div. 1993).

Under these principles, it is clear that, if Mr. Dalton had apparent or express authority to bind Mr. Lachman, an enforceable settlement was reached.  While a formal settlement agreement was never executed, on December 28, 2017, the parties informed the Court that a settlement in this matter had been reached.  All of the essential terms of the settlement were outlined in Mr. Dalton's email of December 28, 2017:  (1) Defendants agreed to pay Plaintiff $2,500; (2) Defendants agreed that Plaintiff could reference the payment of $2,500 in his fee application as evidence that Plaintiff prevailed in this matter; (3) Defendants agreed to waive any challenge to service of process; (4) the Court would determine the appropriate fee award and if Defendants did not pay same within 14 days, absent an appeal, Plaintiff could obtain a judgment for the fee award against ICS, the PLLC, Nauseef and Mr. Lachman, jointly and severally; (5) any party wishing to appeal the Court's fee determination was required to file a Notice of Appeal within 10 days of the Court's award; and (6) the parties consented to Magistrate Judge jurisdiction for the fee award and would follow the briefing schedule set by the Court regarding same.  Nothing material was missing from the aforementioned agreement, and there appeared to be a mutuality of accord between the parties and their attorneys.

As such, the only question that remains with respect to Plaintiff's request for entry of a Final Order and Judgment as to Mr. Lachman is whether Mr. Dalton had express or apparent authority to settle this case for him.  Agreements "'made by attorneys *when acting within the scope of their authority* are enforceable against their clients.'"  *Muhammad v. Dept. of Corrections*, Civil Nos. 05-4999, 05-5001 (JBS/AMD), 2010 WL 715389, at *3 (quoting *Jennings v. Reed*, 885 A.2d 482, 490 (N.J. Super.Ct. App. Div. 2005) (emphasis in original)).  While "[a]n attorney is

presumed to possess authority to act on behalf of the client" (*Jennings*, 885 A.2d at 490), "negotiations are not binding on the client unless the client has expressly authorized the settlement or the attorney acts with apparent authority to reach a settlement[.]" *Muhammad*, 2010 WL 715389 at *3. "The burden of proving an agency is on the party asserting it[,]" here, Plaintiff. *Trustees of the Local 888 Health Fund v. Kissler & Co., Inc.*, Civ. No. 14-8097 (WJM), 2015 WL 5666203, at *3 (D.N.J. Sep. 25, 2015).

Apparent authority exists where "the client's voluntary act has placed the attorney in a situation wherein a person of ordinary prudence would be justified in presuming that the attorney had authority to enter into a settlement." *Amatuzzo v. Kozmiuk*, 703 A.2dd 9, 12 (N.J. Super.Ct. App. Div. 1997). "In the context of private litigation, apparent authority exists 'where the client, by words or conduct communicated to the adverse attorney, engenders a reasonable belief that the attorney possess[es] authority to conclude a settlement. . . .'" *Trustees of the Local 888 Health Fund*, 2015 WL 5666203 at *3 (quoting *Amatuzzo*, 703 A.2d at 12). Notably, "[apparent authority may even be found where the principal denies having granted authority to settle, but nevertheless places the attorney in a position where a person of ordinary prudence, conversant with business usages and the nature of the particular business, is justified in presuming that such agent has authority to perform the particular act in question." *Maiellano v. World Travel Grp., Inc.*, Civil Action No. 06-5835 (JLL), 2009 WL 605264, at *3 (D.N.J. Mar. 9, 2009) *report and recommendation adopted*, 2009 WL 774483 (D.N.J. Mar. 24, 2009). Nevertheless, "the attorney's words or acts alone are insufficient to cloak the attorney with apparent authority." *Amatuzzo*, 703 A.2d at 12. However, "[s]ending an attorney to a settlement conference presumptively establishes that the attorney has the authority to settle." *Thakkar v. Allers*, A-2662-14T3, 2016 WL 3748507, at * (N.J. Super.Ct. App. Div. July 14, 2016) (internal quotation marks and citation omitted).

The parties intensely dispute whether Mr. Dalton had authority to settle this case for Mr. Lachman.  Plaintiff points to Mr. Dalton's presence at the settlement conference on behalf of Mr. Lachman, the negotiations between the parties in which Plaintiff insisted that both Nauseef and Mr. Lachman waive any arguments regarding service and both be personally responsible, in addition to the other defendants, for the fees ultimately awarded by the Court, and, perhaps most importantly, Mr. Lachman's own admission that he authorized Mr. Dalton to agree that "Mr. Lachman would be 'a personal guarantor of any judgment' entered against the remaining Defendants" to establish that Mr. Dalton had, at a minimum, apparent authority, if not express authority to enter into a settlement agreement on Mr. Lachman's behalf.  (Pl. Reply Br. and Opp. to Cross Motion at 6 (quoting Affidavit of Theodore Lachman ¶ 24; Docket Entry No. 62-1); Docket Entry No. 67).

In contrast, Mr. Lachman argues that there was no agency relationship between himself in his personal capacity and Mr. Dalton.  Indeed, Mr. Lachman contends that he, in his personal capacity, was never even a client of Mr. Dalton's and that Mr. Dalton did not attend the settlement conference on his personal behalf.  Mr. Lachman disavows authorizing Mr. Dalton to (1) waive any challenge to service of process of him in his personal capacity; (2) include him in his personal capacity in any part of the settlement in this case; (3) agree that he would be jointly and severally liable in his personal capacity as part of any settlement in this matter; or (4) agree that he would be liable in his personal capacity for any judgment in this matter.  (*Id*. ¶¶ 20-23).  Further, Mr. Lachman points to an email he sent Mr. Dalton the day before Mr. Dalton represented to the Court that the matter had settled, purportedly, in part, on Mr. Lachman's behalf, as proof that Mr. Dalton lacked express or apparent authority to bind Mr. Lachman:   "Take me out personally out of the

whole ordeal. I will not be part of any Judgment. . . ." (*Id*. ¶ 19 (internal quotation marks and citation omitted)).

Despite Mr. Lachman's vehement opposition to the contrary, after considering the arguments made and evidence submitted, the Court finds that Plaintiff has established that Mr. Dalton had express authority to settle this matter for Mr. Lachman.  In coming to this conclusion, the Court is aware that there was never a retainer agreement or any formal written document confirming Mr. Dalton's representation of Mr. Lachman.  The Court is also aware that Mr. Lachman was never served with process in this matter.  The Court, however, is equally aware that the lack of a formal retainer agreement is not dispositive of the question concerning whether Mr. Dalton had either express or apparent authority to bind Mr. Lachman to the settlement agreement reached in this case.  Similarly, the Court is aware that there can be value for an unserved defendant to decide to participate and be bound by a settlement agreement.  Indeed, as Mr. Dalton observed, such individuals obtain finality and a release protecting them from further litigation. *See* Tr. of Proceedings of 7/22/2021 at 94:16 – 95:4.

With this in mind, the Court turns to the other evidence submitted by the parties and determines that on balance it supports a finding that Mr. Dalton represented Mr. Lachman in his personal capacity and attended the settlement conference held on December 12, 2017, in part, on Mr. Lachman's personal behalf.  The Court further determines that the evidence as a whole supports a finding that Mr. Dalton had express authority to bind Mr. Lachman to the settlement entered in this case.  In reaching this conclusion, the Court notes that Mr. Dalton testified that he had many discussions with Mr. Lachman in his individual capacity, that he had authority to speak on Mr. Lachman's behalf regarding settlement, and that he believed he had an attorney client relationship with Mr. Lachman individually. (*Id*. at 67:3-5, 67:6-8, 88:5-13). Further, despite Mr.

Lachman's insistence that he was never personally represented by Mr. Dalton, Mr. Lachman, himself, testified that he had, in his personal capacity, conferred with Mr. Dalton regarding the settlement terms in this case. *See, e.g., Id*. at 8:20-22; 16:17-19.  Similarly, despite Mr. Lachman's insistence that he was not represented by Mr. Dalton in his personal capacity and never agreed to be liable in his personal capacity as part of the settlement agreement reached in this case, Mr. Lachman also confirmed that it was his "understanding" that he would "be a personal guarantor of any judgment that was entered against Defendant Clayton, Myrick, McClanahan & Coulter, PLLC, Defendant Internal Credit, Systems, Inc., and Defendant Robert J. Nauseef[.]"  (Affidavit of Theodore Lachman ¶ 24; Docket Entry No. 62-1); *see also* Tr. of Proceedings of 7/22/2021 at 22:15-17, 31:14-17.

Furthermore, the Court finds that Mr. Lachman's own email, which he cites as strong evidence that Mr. Dalton lacked either express or apparent authority to bind him individually to the settlement agreement, in fact, supports the opposite conclusion.  On December 27, 2017, Mr. Lachman wrote Mr. Dalton:

> [W]e [sic] can talk about this.  This is my thought.  I still do not like the appeal. He's going to carry this on and on. If he wants us to give up something, he needs to give up something.  Take me out personally out of the whole ordeal.  I will not be part of any Judgment.  Make sure he understand [sic], i'm [sic] the only one with money.  He's not going to get paid by the other three.  He's never going to get me served.

(Email from Mr. Lachman to Christopher Dalton of 12/27/2017 at 10:35 a.m.; Affidavit of Theodore Lachman Affidavit, Ex. 1; Docket Entry No. 62-1).  While the email expresses Mr. Lachman's reaction that he wants to be taken out of the judgment, it also clearly establishes that Mr. Lachman had previously agreed to personally be part of a judgment because if he hadn't, there would have been little purpose in asking to be taken out of same, and, indeed, on December 22,

2017, Mr. Lachman had previously agreed to be personally part of a judgment.  (*See* Supplemental Declaration of Christopher Dalton, attaching Email from Mr. Lachman to Mr. Dalton of 3/22/2017 at 3:51 p.m. (indicating that Mr. Lachman responded "looks good" to Mr. Dalton's email "conveying Defendants' final, reasonable position[,]" which included the provision that "[i]f Defendants do not pay whatever the Court awards within 14 days, Plaintiff can enter a judgment for that amount against ICS, Clayton Myrick, Bob, and Ted, jointly and severally"; Docket Entry No. 80-3).  Further, according to Mr. Lachman's own email of December 27, 2017, he and Mr. Dalton were still "talking about" "his thoughts."  While there is no subsequent correspondence confirming exactly what was discussed, given that Mr. Dalton did not email the Court to confirm that a settlement was reached until over 24 hours after Mr. Lachman sent the December 27, 2017 email, it is likely that additional discussions occurred.

Notably, Mr. Dalton confirmed that he and Mr. Lachman continued to discuss the settlement ultimately reached after Mr. Lachman sent the aforementioned email.  Mr. Dalton testified that he and Mr. Lachman had telephone conversations regarding the settlement in which Mr. Dalton explained that Mr. Lachman's "change of position would have meant kicking the whole thing back into litigation, which had been expensive, time-consuming."  Tr. of Proceedings of 7/22/2021 at 86:14-16.  Mr. Dalton testified that Mr. Lachman then reagreed to be bound to the terms of the settlement agreement provided to the Court on December 28, 2017, including the provision calling for him to be personally liable if Defendants failed to pay the amount ordered by the Court.  *See id*. at 86:16-17; 91:3-12.  Obviously, Mr. Lachman's testimony diverges on this point.  However, the Court finds Mr. Dalton to be the more credible witness of the two.  The Court reaches this conclusion based not only on the demeanor of both witnesses while testifying, but also on the evidence showing that (1) Mr. Lachman is a sophisticated businessman; (2) Mr. Lachman

19

was aware that during at least some of the settlement discussions, he was to be part of the judgment; and (3) Mr. Lachman's understanding that he would "be a personal guarantor of any judgment that was entered against" the PLLC, ICS and Nauseef, and that Plaintiff would be able to seek "the unpaid judgment" from Mr. Lachman if the other Defendants failed to pay same.  (Affidavit of Theodore Lachman ¶¶ 24-25; Docket Entry No. 62-1).  Again, this evidence establishes that Mr. Dalton represented Mr. Lachman in his personal capacity and had express authority to settle this case on his behalf.

Thus, the Court finds that Mr. Dalton represented Mr. Lachman in his personal capacity during the settlement discussions that took place in this matter and had express authority to settle this case on Mr. Lachman's behalf according to the terms provided to the Court on December 28, 2017.  Given this determination, the Court grants Plaintiff's request for a Final Order and Judgment.  In light of the foregoing, the Court need not substantively address Mr. Lachman's motion to dismiss, which is denied.

## III. Conclusion

For the reasons stated above, Plaintiff's motion seeking the entry of a Final Order and Judgment against Mr. Lachman is GRANTED and Mr. Lachman's cross motion to dismiss is DENIED.  An appropriate Order follows.

Dated: November 24, 2021

s/Tonianne J. Bongiovanni_____
HON. TONIANNE J. BONGIOVANNI
UNITED STATES MAGISTRATE JUDGE

20